# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| LOUIS SCARANTINO, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. _____<br>)<br>) JURY TRIAL DEMANDED |
| SILVER BAY REALTY TRUST CORP., IRVIN R. KESSLER, THOMAS W. BROCK, TANUJA M. DEHNE, STEPHEN G. KASNET, THOMAS E. SIERING, DARYL J. CARTER, W. REID SANDERS, MARK WELD, SILVER BAY MANAGEMENT LLC, SILVER BAY OPERATING PARTNERSHIP L.P., TRICON CAPITAL GROUP INC., TAH ACQUISITION HOLDINGS LLC, and TAH ACQUISITION LP, | ) CLASS ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on February 27, 2017 (the "Proposed Transaction"), pursuant to which Silver Bay Realty Trust Corp. ("Silver Bay" or the "Company") will be acquired by Tricon Capital Group Inc. and its affiliates.

2. On February 27, 2017, Silver Bay's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Tricon Capital Group Inc., TAH Acquisition Holdings LLC,

TAH Acquisition LP (collectively, "Tricon"), Silver Bay Management LLC, and Silver Bay Operating Partnership L.P.  Pursuant to the terms of the Merger Agreement, shareholders of Silver Bay will receive $21.50 per share in cash.

3. On March 28, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.  The Proxy Statement scheduled a stockholder vote on the Proposed Transaction for May 5, 2017.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement, and that the stockholder vote should be enjoined until defendants disclose the material information sought herein.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

8.  Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Silver Bay common stock.

9.  Defendant Silver Bay is a Maryland corporation and maintains its principal executive offices at 3300 Fernbrook Lane North, Suite 210, Plymouth, Minnesota 55447. Silver Bay's common stock is traded on the NYSE under the ticker symbol "SBY."

10. Defendant Irvin R. Kessler ("Kessler") is a director and Chairman of the Board of Silver Bay.

11. Defendant Thomas W. Brock ("Brock") is a director of Silver Bay and has served as President and Chief Executive Officer ("CEO") since June 2016.

12. Defendant Tanuja M. Dehne ("Dehne") is a director of Silver Bay. According to the Company's website, Dehne is a member of the Audit Committee and the Nominating & Corporate Governance Committee and is Chair of the Compensation Committee.

13. Defendant Stephen G. Kasnet ("Kasnet") is a director of Silver Bay. According to the Company's website, Kasnet is Chair of the Audit Committee and a member of the Compensation Committee.

14. Defendant Thomas E. Siering ("Siering") is a director of Silver Bay.

15. Defendant Daryl J. Carter ("Carter") has served as a director of Silver Bay since July 2013. According to the Company's website, Carter is a member of the Audit Committee and Chair of the Nominating & Corporate Governance Committee.

16. Defendant W. Reid Sanders ("Sanders") has served as a director of Silver Bay since August 2016. According to the Company's website, Sanders is a member of the Compensation Committee and the Nominating & Corporate Governance Committee.

3

17.     Defendant Mark Weld ("Weld") has served as a director of Silver Bay since January 2017.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19.     Defendant Silver Bay Management LLC is a Delaware limited liability company and a party to the Merger Agreement.

20.     Defendant Silver Bay Operating Partnership L.P. is a Delaware limited partnership and a party to the Merger Agreement.

21.     Defendant Tricon Capital Group Inc. is a company incorporated under the laws of the Province of Ontario and a party to the Merger Agreement.

22.     Defendant TAH Acquisition Holdings LLC is a Delaware limited liability company and a party to the Merger Agreement.

23.     Defendant TAH Acquisition LP is a Delaware limited partnership and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Silver Bay (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25.     This action is properly maintainable as a class action.

26.     The Class is so numerous that joinder of all members is impracticable.  As of February 24, 2017, there were approximately 35,322,624 shares of Company common stock outstanding held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

31. Silver Bay focuses on the acquisition, renovation, leasing, and management of single-family properties for rental income and long-term capital appreciation.

32. The Company generates virtually all of its revenue by leasing its portfolio of single-family properties.

33. On February 27, 2017, Silver Bay issued a press release wherein it reported its financial results for the fourth quarter and full year 2016.

34. For the fourth quarter of 2016, the Company reported total revenue of $32.5 million, a 5.9% increase compared to total revenue of $30.6 million for the fourth quarter of 2015. The Company owned 9,044 properties as of December 31, 2016, compared to 9,022 properties as of December 31, 2015. Net income attributable to common stockholders was $2.7 million, or $0.07 per diluted common share, compared to net loss attributable to common stockholders for the fourth quarter of 2015 of $0.8 million, or $0.02 per basic and diluted common share. The Company reported net operating income ("NOI") of $19.7 million, an 11.2% increase compared to NOI of $17.8 million for the fourth quarter of 2015. Same-Home NOI increased to $13.0 million, a 13.6% increase compared to Same-Home NOI of $11.5 million for the fourth quarter of 2015. Core funds from operations ("Core FFO") was $9.1 million, or $0.24 per share, a 20% increase on a per share basis compared to Core FFO for the fourth quarter of 2015 of $7.6 million, or $0.20 per share.

35. For the full year 2016, the Company reported total revenue of $126.6 million, an 11.4% increase compared to total revenue of $113.7 million for the year ended December 31, 2015. The Company reported NOI of $73.0 million, a 16.0% increase compared to NOI of $62.9 million for the year ended December 31, 2015. Same-Home NOI increased to $48.4 million, a 9.9% increase compared to Same-Home NOI of $44.0 million for the year ended December 31, 2015. Core FFO was $31.2 million, or $0.82 per share, a 24.2% increase on a per share basis compared to Core FFO for the year ended December 31, 2015 of $25.4 million, or $0.66 per

share.

36. With respect to the financial results, Individual Defendant Brock commented:

> Over the past year, we have been making excellent strides in driving efficiency across our operating platform. *We closed out the year with the best quarter in our company's history*, including a 96.7% occupancy rate, strong rental increases on both re-leases and renewals, a Same-Home Core NOI Margin of 60.7% and record Core FFO[.]

(Emphasis added).

37. Nevertheless, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired for inadequate consideration.

38. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Sections 7.4(a) and (b) of the Merger Agreement state, in relevant part:

> (a) Company agrees that it shall not, nor shall it permit any of the Company Subsidiaries to, authorize or permit any of its officers, directors or employees to, and shall use its commercially reasonable efforts to cause its and the Company Subsidiaries' other Representatives not to, directly or indirectly, (i) initiate, solicit or knowingly encourage or knowingly facilitate any inquiries or the making of any proposal or offer by or with a Third Party with respect to any Acquisition Proposal, (ii) engage in any discussions or negotiations concerning, or provide any non-public information to any Third Party in connection with, or for the purpose of, encouraging or facilitating any Acquisition Proposal or the making of any proposal or offer that could reasonably be expected to lead to any Acquisition Proposal or (iii) enter into any letter of intent, agreement in principle, merger agreement, asset purchase or share exchange agreement, option agreement or other similar agreement with any Third Party providing for any Acquisition Proposal (each, an "Acquisition Agreement"). . . .

(b) Company agrees that (i) it will and will cause the Company Subsidiaries, and its and their Representatives to, cease immediately and terminate any and all existing activities, discussions or negotiations with any Third Parties conducted heretofore with respect to any Acquisition Proposal and cause such Third Party to return to Company any nonpublic information or data provided to it and (ii) it will not release any Third Party from, or terminate, waive, amend or modify any provisions of, any confidentiality or standstill agreement to which it or any Company Subsidiary is a party with respect to any Acquisition Proposal; provided, however, that the Company Board may, to the extent the Company Board concludes in good faith (after consultation with its outside legal counsel) that the failure to do so would reasonably be expected to be inconsistent with their fiduciary duties under applicable Law, release any Third Party from its standstill obligations solely for purposes of enabling such Third Party to confidentially submit to the Company Board an Acquisition Proposal.

39. Further, the Company must promptly advise Tricon of any proposals or inquiries received from other parties. Section 7.4(a)(ii) of the Merger Agreement states:

Company will (A) advise Parent in writing of the receipt of any Acquisition Proposal, the material terms and conditions thereof (including, if applicable, providing copies of any written Acquisition Proposal and drafts of proposed agreements related thereto) and the identity of any person making such Acquisition Proposal on a prompt basis (and in any event within forty-eight (48) hours) and (B) promptly (and in any event within forty-eight (48) hours thereafter) notify Parent of any changes to the financial and other material terms and conditions of any Acquisition Proposal and otherwise keep Parent reasonably informed of any material changes to the status of any such Acquisition Proposal, including by providing copies of all proposals, offers and drafts of proposed agreements related thereto.

40. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Tricon a "matching right" with respect to any "Superior Proposal" made to the Company. Section 7.4(a)(iv) of the Merger Agreement provides:

Notwithstanding anything in this Agreement to the contrary, with respect to an Acquisition Proposal, the Company Board may, prior to receipt of the Company Stockholder Approval, make in writing a Change in Company Recommendation (and in the event that the Company Board determines such Acquisition Proposal to be a Superior Proposal, in accordance with this Section 7.4, terminate this

8

Agreement in writing pursuant to Section 9.1), if and only if (A) an unsolicited bona fide written Acquisition Proposal (provided that the Acquisition Proposal did not result from a breach of this Section 7.4) is made to Company and is not withdrawn, (B) the Company Board has concluded in good faith (after consultation with its outside legal counsel and financial advisors) that such Acquisition Proposal constitutes a Superior Proposal, (C) the Company Board has concluded in good faith (after consultation with its outside legal counsel) that failure to do so would reasonably be expected to be inconsistent with their fiduciary duties under applicable Law, (D) three (3) Business Days (the "Notice Period") shall have elapsed since Company has given written notice to Parent advising it that Company intends to take such action and specifying in reasonable detail the reasons therefor, including the identity of the person making such Acquisition Proposal, material terms and conditions of any such Superior Proposal that is the basis of the proposed action, including, if applicable, copies of any written proposals or offers and any proposed agreements related thereto (a "Notice of Recommendation Change"), which Notice of Recommendation Change or intention shall not be deemed a Change in Company Recommendation for any purpose of this Agreement, (E) during such Notice Period, Company has considered and, at the reasonable request of Parent, engaged in good faith discussions with Parent regarding any adjustment or modification of the terms of this Agreement proposed by Parent, and (F) the Company Board, following such Notice Period, again concludes in good faith (after consultation with its outside legal counsel and taking into account any adjustment or modification of the terms of this Agreement proposed by Parent) that the failure to do so would reasonably be expected to be inconsistent with their fiduciary duties under applicable Law and that such Acquisition Proposal continues to constitute a Superior Proposal; provided, however, that if, during the Notice Period, any material revisions are made to the Superior Proposal by such Third Party, Company, shall promptly give a new written notice to Parent and shall comply in all respects with the requirements of this Section 7.4(a)(iv), which shall apply anew, with respect to such new written notice (provided, however, that in this instance the Notice Period shall be two (2) Business Days instead of three (3) Business Days).

41. Further locking up control of the Company in favor of Tricon, the Merger Agreement provides for a "termination fee" of $24.5 million payable by the Company to Tricon if the Individual Defendants cause the Company to terminate the Merger Agreement.

42. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

43. Additionally, the Individual Defendants entered into a support agreement with Tricon, pursuant to which they have agreed to vote their Company shares in favor of the Proposed Transaction. Accordingly, such shares are already locked up in favor of the merger.

44. The consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

45. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

46. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

47. Meanwhile, certain of the Company's officers and directors stand to receive substantial benefits as a result of the Proposed Transaction.

48. For example, members of Silver Bay management, including Lawrence B. Shapiro ("Shapiro"), Daniel J. Buechler ("Buechler"), and Julie M. Ellis ("Ellis"), will be retained by Tricon following the close of the Proposed Transaction.

49. Additionally, Individual Defendant Brock stands to receive over $4.17 million in connection with the Proposed Transaction. Shapiro stands to receive over $3.57 million; Buechler stands to receive over $2.14 million; and executive officer Griffin Wetmore stands to receive nearly $2.3 million.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

50. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

10

51. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

52. First, the Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor, Goldman, Sachs & Co. ("Goldman Sachs"), in support of its so-called fairness opinion.

53. Notably, the Proxy Statement fails to disclose Silver Bay's financial projections for fiscal years 2017 through 2019.

54. With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) estimates of unlevered free cash flow for Silver Bay for fiscal years 2017 through 2019; (ii) the definition of unlevered free cash flow; (iii) all constituent line items used in calculating unlevered free cash flow; (iv) the range of illustrative terminal values for Silver Bay and terminal year estimate of the free cash flow to be generated by Silver Bay; (v) Goldman Sachs' basis for applying capitalization rates for terminal values ranging from 5.7% to 6.3%; and (vi) Silver Bay's assumed net debt.

55. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the estimated FFO per share of Silver Bay common stock for each of the fiscal years 2018 to 2019; (ii) Goldman Sachs' basis for applying one year forward FFO multiples of 18.0x to 22.0x; and (iii) estimated future dividends per share of Silver Bay common stock.

56. With respect to Goldman Sachs' *Selected Companies Analysis*, the Proxy Statement fails to disclose the individual multiples, financial metrics, and ratios for the companies observed by Goldman Sachs in the analysis.

57.     With respect to Goldman Sachs' *Premiums Paid Analysis*, the Proxy Statement fails to disclose the acquisitions observed by Goldman Sachs in the analysis, as well as Goldman Sachs' basis for using the closing price per share of Silver Bay common stock on February 13, 2017 for the analysis.

58.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

59.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; and (iii) "Fairness Opinion of Goldman, Sachs & Co."

60.     Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

61.     Specifically, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Silver Bay's officers and directors, including who participated in all such communications, including the timing and nature of such discussions with respect to the retention of Company officers Shapiro, Buechler, and Ellis.

62. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

63. Third, the Proxy Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the "process" the directors used in coming to their decision to support the Proposed Transaction.

64. For example, the Proxy Statement fails to disclose whether the nondisclosure agreements entered into between Silver Bay and the various parties, including Company A, Company H, Company I, and Company J, contained "don't ask, don't waive" provisions.

65. The Proxy Statement fails to disclose the terms and/or values of certain indications of interest received by Silver Bay, including those discussed at the September 25, 2015 Board meeting; those received from Company D, Company E, Company F, and Company G; that received from Tricon as discussed at the November 12, 2015 Board meeting; the four received between November 23, 2015 and December 17, 2015; Company J's January 14, 2016 proposal; and Company K's August 15, 2016 proposal.

66. The Proxy Statement fails to disclose the reasons "[d]iscussions between Silver Bay and Company K ceased in December 2016."

67. The Proxy Statement further fails to disclose Goldman Sachs' holdings in Tricon's and its affiliates' stock.

68. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Board and Reasons for the Merger"; and (iii) "Fairness Opinion of Goldman, Sachs & Co."

69. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Silver Bay's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Silver Bay**

70. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Silver Bay is liable as the issuer of these statements.

72. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

73. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

74. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

75. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

76. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

77. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Tricon

78. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

79. The Individual Defendants and Tricon acted as controlling persons of Silver Bay within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Silver Bay and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

80. Each of the Individual Defendants and Tricon was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

81. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

82. Tricon also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

83. By virtue of the foregoing, the Individual Defendants and Tricon violated Section 20(a) of the 1934 Act.

84. As set forth above, the Individual Defendants and Tricon had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.	Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.	Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.	Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: April 5, 2017

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 3112
Berwyn, PA 19312
(484) 324-6800

**ALTMAN & IZEK**

By:  *s/ Adam Altman*
Adam Altman
Douglas B. Altman
901 North Third Street, Suite 140
Minneapolis, MN 55401
Telephone: (612) 335-3700
E-mail: adam@altmanizek.com

*Attorneys for Plaintiff*

17

## CERTIFICATION OF PLAINTIFF

I, Louis Scarantino ("Plaintiff"), hereby declare as to the claims asserted under the federal securities laws that:

1. Plaintiff has reviewed the complaint and authorizes its filing.

2. Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, and I will testify at deposition or trial, if necessary. I understand that this is not a claim form and that I do not need to execute this Certification to share in any recovery as a member of the class.

4. Plaintiff's purchase and sale transactions in the Silver Bay Realty Trust Corp. (NYSE: SBY) security that is the subject of this action during the class period is/are as follows:

| PURCHASES | | | SALES | | |
|---|---|---|---|---|---|
| **Buy Date** | **Shares** | **Price per Share** | **Sell Date** | **Shares** | **Price per Share** |
| 5/20/16 | 55 | $14.48 | | | |
| | | | | | |
| | | | | | |
| | | | | | |

*Please list additional transactions on separate sheet of paper, if necessary.*

5. Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

2

6. During the three years prior to the date of this Certification, Plaintiff has not moved to serve as a representative party for a class in an action filed under the federal securities laws.

7. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____ day of April, 2017.

_____
LOUIS SCARANTINO